IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

KRIS CRUTCHER, and TRI-LAKES
DIAGNOSTIC IMAGING, LLC,

      Plaintiffs,

v.                                CIVIL ACTION NO. _____

MULTIPLAN, INC., and PRIVATE
HEALTHCARE SYSTEMS, INC.,

      Defendants.
_____/

## COMPLAINT

      Plaintiffs, KRIS CRUTCHER (hereafter "CRUTCHER") and TRI-LAKES DIAGNOSTIC IMAGING, LLC (hereafter "TRI-LAKES"), sue the Defendants, MULTIPLAN, INC. (hereafter "MULTIPLAN"), and PRIVATE HEALTHCARE SYSTEMS, INC. (hereafter "PHCS"), and alleges as follows:

## JURISDICTION AND VENUE

      1.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a federal question, and supplemental jurisdiction under 28 U.S.C. § 1367 for the related state law claims. Jurisdiction of this Court also arises under 28 U.S.C. § 1332 as the parties to this action are citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

      2.     CRUTCHER and TRI-LAKES bring this action to recover damages for acts on the part of MULTIPLAN and PHCS alleged to be in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d) (hereafter "RICO"), and which give rise to

common law claims for Unjust Enrichment, Civil Conspiracy, Common Law Fraud, and Accounting and Disgorgement.

3.      Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## PARTIES

4.      Plaintiff CRUTCHER is and at all material times was a medical provider based in Branson, Missouri, providing medical diagnostic imaging services to patients through her Limited Liability Company ("LLC"), TRI-LAKES DIAGNOSTICS IMAGING (hereafter "TRI-LAKES").

5.      Plaintiff TRI-LAKES is and at all material times was a single member Missouri LLC, duly organized pursuant to the Missouri Limited Liability Company Act, and officially recognized as a Limited Liability Company by a Certificate of Organization issued by the Secretary of State of Missouri on February 5, 2008, Charter No. LC0872399, with its place of business located at 523 State Hwy 248, Suite 300, Branson, Missouri 65616.  TRI-LAKES is and at all material times was owned and operated by CRUTCHER.

6.      Defendant MULTIPLAN is and at all material times was a New York corporation with its principal place of business in New York, New York.

7.      Defendant PHCS is and at all material times was a Delaware corporation with its principal place of business in New York, New York.

## FACTUAL ALLEGATIONS

8.      At all times material hereto, Defendants MULTIPLAN and PHCS operated as Preferred Provider Organization ("PPO") Administrators, in which capacity Defendants purport to

work as intermediaries between health care providers and health insurance companies, also known as "insurance payers," to create a "PPO network." Such insurance payers reimburse health care providers for services rendered to the payers' insureds.

9.     A PPO is designed to manage the provision of health care services through arrangements between health care providers (such as CRUTCHER/TRI-LAKES), insurance payers, and PPO Administrators (such as MULTIPLAN and PHCS) who establish this PPO arrangement.

10.     In PPO arrangements, health care providers agree to offer a discounted rate to patients who are insured by payers in the network, known as "in network rates." In return, payers with access to the discounted rate must provide incentives to patients that "steer" them to the health care providers. In this way, health care providers are compensated for the discounted rate by an increase in volume of patients.

11.     As PPO Administrators, MULTIPLAN and PHCS are responsible for determining which of a provider's patients are "in network" and which are "out of network." Once MULTIPLAN/PHCS makes this determination, it applies any applicable discount rate, it determines whether that patient's insurance company pays an "in network reimbursement rate" or an "out-of-network" reimbursement rate, and it sends the bill to that patient's insurance company. The insurance company then reimburses the provider in the amount determined by MULTIPLAN/PHCS.

12.     A "Silent PPO" is a payment scheme used to obtain illegal discounts for payers who are not entitled to them, without the provider's knowledge or consent.

13.     A "Silent PPO" scheme works as follows: a PPO Administrator (such as MULTIPLAN or PHCS) applies PPO discounts utilizing the PPO network against payments owed

to health care providers by insurance payers for medical services without the providers' knowledge or consent, either by applying PPO discounts where no PPO agreement exists between the PPO Administrator and the providers and/or patients at issue, and/or by renting providers' discount rates to payers who are not part of the contracted PPO network, either directly to the third-party payer, or through various downstream entities, thereby providing discounts to payers to whom a provider never intended to give a discount, and allowing third-party payers to access providers' discount rates without providing the "steerage" necessary to create a valid PPO relationship. An example of the "Silent PPO" scheme as illustrated by the Texas Medical Association is attached as Exhibit "A."[1]

14.     Specifically, the PPO acts as a "rental network," existing to market a physician's discounted rates to third party payers, other PPOs, third party administrators, network brokers, dedicated repricers, or self-insured employers, and then renting or leasing its PPO network discounts, including a providers' discount rate, to the aforementioned entities in exchange for an "access fee" and other kickbacks to share in the savings obtained by applying the discount rates. "Network brokers" and "repricers" then aggressively market themselves to other third-party payers by advertising that they have access to provider discounts in these rented PPO networks. Payers enter into agreements with these network brokers and dedicated repricers in order to find and obtain access to the deepest discount a physician has agreed to with a particular rental network PPO. This often results in payers applying discounts to medical claims that are unrelated to any

---

[1] The chart was presented by the Texas Medical Association to the Texas legislature in connection with a bill to regulate Silent PPO activity through "rental network," which ultimately passed and was signed into law, effective September 1, 2013. The chart illustrates the issue encountered by Philip Korenman, MD, a Plano, TX, psychiatrist, along with his patients, was a victim of a silent PPO by MULTIPLAN. Like Dr. Korenman, MULTIPLAN applied discounts to CRUTCHER's claims using an agreement entered into with a different PPO network in 2000 2000 – nearly a decade before the discounts at issue were applied by the Defendants – compounded in this case by the fact that the agreement was entered into by a completely different provider, as described infra.

rate that the provider has agreed to in an associated payer contract, and virtually eliminates "out of network" claims and "out of network" payments by and to providers.

15.     This "Silent PPO" scheme harms providers and patients alike. Patients are often misled into thinking they are treating with an physician that is in their network, when in reality they are not, resulting in patients being charged "out of network" rates and paying a higher percentage of the physician's full billed charges when the lowest payment rate is applied to payments submitted by out of network providers, while at the same time said providers are being discounted at the "in network" rate for the same exact claims. Providers lose significant revenue as a result of giving discounts to payers on claims that should be paid based on the physician's full billed charges, and providers do not and/or cannot "balance bill" the patients for the difference between the full billed and discounted charges.

16.     The "Silent PPO" or "rental network PPO" discounts are applied without any benefit or value to the providers because no patient steerage results from these arrangements.

17.     Moreover, the above described rental or lease agreements allow third party payers, network brokers, dedicated repricers and other downstream entities to apply their own payment methodology to claims, often resulting in further reduction in the amount paid to providers.

18.     Defendants MULTIPLAN and PHCS engaged in a "Silent PPO" scheme with respect to Plaintiffs CRUTCHER and TRI-LAKES whereby Defendants applied unauthorized and illegal discounts to medical claims submitted to insurance payers by CRUTCHER/TRI-LAKES using the PHCS network and/or the MULTIPLAN complimentary network despite the fact that no PPO contract ever existed between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS.

19.     Additionally, MULTIPLAN and PHCS engaged in a "Silent PPO" scheme with respect to Plaintiffs CRUTCHER/TRI-LAKES by renting or leasing access to the MULTIPLAN

and PHCS discount rate to third party payers, third party administrators, network brokers, and other downstream entities, resulting in the MULTIPLAN and/or PHCS network discount being applied to claims submitted by CRUTCHER/TRI-LAKES to payers that accessed the discount through such rental or lease agreements, and additional discounts being applied by said downstream entities pursuant to their own payment methodologies, resulting in further reduction in the amount paid to CRUTCHER/TRI-LAKES, and often times resulting in a total write down of the billed charges to zero dollars ($0.00). To wit, MULTIPLAN entered into agreements with Coventry Health Care, Inc., and Coventry Health Care Workers' Compensation, Inc., who operate as network brokers, resulting in numerous additional discounts being applied by third-party payers and third party administrators to claims for, among other things, medical services rendered by CRUTCHER/TRI-LAKES under workers compensation law, including but not limited to, Cox HealthPlans, and Cox Health Systems Insurance Company, without CRUTCHER's knowledge or consent.

20.     Notwithstanding that no valid contractual agreement existed between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS, the very nature of worker's compensation insurance is inconsistent with a provider's incentives for entering into a PPO agreement, in that workers' compensation insurance is a state mandated insurance product purchased by employers to be used by employees who are injured during the course of their employment. Workers' compensation services are paid in full. Therefore, there is no mechanism to provide financial incentives (i.e. lower co-payments) for patients to seek treatment from specific providers, and consequently, the "steerage" benefit required in a valid PPO arrangement does not occur

21.     Moreover, in connection with the Silent PPO scheme, patients of CRUTCHER/TRI-LAKES were being charged the "out of network" rate by payers for services

rendered by CRUTCHER/TRI-LAKES, even though MULTIPLAN and PHCS applied "in network" discounts against the payments for these same services using the PHCS network and/or the MULTIPLAN complimentary network.

22.     On or about June 4, 2008, CRUTCHER sent a letter on behalf of TRI-LAKES, to PHCS, stating, among other things, that the name of the business entity occupying the physical address of her business had changed, noting that TRI-LAKES had a separate federal Tax-ID number, and that the previous entity at that location, Branson Imaging,[2] had a PPO agreement with PHCS, and that because TRI-LAKES offered the same services that Branson Imaging did, CRUTCHER had an interest in TRI-LAKES continuing to participate in the PHCS network. CRUTCHER requested that PHCS inform CRUTCHER if any additional information was needed in order for TRI-LAKES to be a provider with PHCS. A copy of the letter is attached hereto as Exhibit "B."

23.     On or about June 19, 2008, CRUTCHER sent a letter on behalf of TRI-LAKES to PHCS via facsimile stating that TRI-LAKES "[was] interested in becoming a provider for services with [PHCS]," that "a previous contract [existed] with [PHCS] through a radiologist who is no longer affiliated with this facility," that a change in ownership had taken place, and that a name change had occurred. CRUTCHER's letter requested that PHCS send "an application for participation" for TRI-LAKES to the address listed in the letter. A copy of the letter is attached hereto as Exhibit "C."

---

[2] The legal name of the referenced business entity is "Medical Investments of Branson, LLC" which was a Missouri Limited Liability Company ("LLC"), Charter No. LC0031176, officially recognized as a Limited Liability Company by a Certificate of Organization issued by the Secretary of State of Missouri on September 8, 1999. Medical Investments of Branson thereafter filed a Registration of Fictitious Name with the Missouri Secretary of State, Corporation Division, on October 4, 1999, indicating that it was doing business as "Branson Imaging, LLC." TRI-LAKES is an entirely separate legal entity from Branson Imaging.

24.     On or about July 30, 2008, MUTIPLAN sent a facsimile correspondence to CRUTCHER in response to her aforementioned request for the application for participation, stating that MUTIPLAN was "in receipt of [the] recent request to participate as an ancillary provider for [MULTIPLAN]/PHCS," and that "[MULTIPLAN] is currently evaluating" the request and would "respond to the request in approximately 90 days." A copy of the correspondence is attached hereto as Exhibit "D."

25.     Subsequent to the July 30, 2008 communication, no PPO contract was ever entered into between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS.

26.     Despite the absence of a valid contractual agreement, MULTIPLAN and PHCS began utilizing the PHCS network and the MULTIPLAN complimentary network to discount medical claims submitted by CRUTCHER/TRI-LAKES to various insurance payers.

27.     Thereafter, between 2008 and the current, CRUTCHER sent numerous disputes to payers in connection with the unauthorized discounting and/or repricing of claims sent by CRUTCHER/TRI-LAKES to said payers by MULTIPLAN and PHCS using the PHCS network and/or the MULTIPLAN complimentary network, stating that CRUTCHER/TRI-LAKES has no contract with MULTIPLAN/PHCS and demanding that further repricing of claims using the MULTIPLAN/PHCS networks cease. An example of such dispute letters is attached as Composite Exhibit "E."

28.     Moreover, CRUTCHER sent numerous letters to MULTIPLAN and PHCS stating that no contractual arrangement existed between CRUTCHER/TRI-LAKES and MULTIPLAN and PHCS, and to immediately cease all repricing of medical claims submitted by TRI-LAKES. An example of such letters is attached as Composite Exhibit "F."

29.     Nevertheless, MULTIPLAN and PHCS maintained their position that the discounts were valid, resulting in the refusal by said payers to reverse the unauthorized discounts.

30.     In addition, CRUTCHER became aware that patients were being charged the "out of network" rate by payers for services rendered by CRUTCHER/TRI-LAKES, even though claims submitted by CRUTCHER/TRI-LAKES to payers for these same services were being discounted at the "in network" rate by MULTIPLAN and PHCS using the PHCS network and/or the MULTIPLAN complimentary network.

31.     Upon recognizing that certain claims submitted by CRUTCHER/TRI-LAKES to insurance payers had been discounted by MULTIPLAN, CRUTCHER sent a facsimile correspondence to MULTIPLAN on or about July 17, 2009, requesting that MULTIPLAN send her a copy of any alleged written contract between MULTIPLAN and TRI-LAKES. A copy of the letter is attached hereto as Exhibit "G."

32.     On July 20, 2009, MULTIPLAN sent CRUTCHER a facsimile correspondence stating that "a letter on letterhead from the CEO, President or Owner with title and signature" was required in order for MULTIPLAN to send a copy of the contract as requested. A copy of the correspondence is attached hereto as Exhibit "H."

33.     On or about July 20, 2009, CRUTCHER sent the requested letter, signed by CRUTCHER as owner of TRI-LAKES, requesting a copy of any contract between MULTIPLAN and TRI-LAKES. A copy of the letter is attached hereto as Exhibit "I."

34.     On or about July 22, 2009, a MULTIPLAN representative identified as Claire Lively (hereafter, "LIVELY") sent a letter to CRUTCHER stating that MULTIPLAN "ha[s] been unable to locate the [MULTIPLAN]/PHCS facility contract effective 9-1-2004 that you requested"

and "it is probable that you will need an updated contract for your ancillary facility." A copy of the letter is attached hereto as Exhibit "J."

35. On or about July 29, 2009, LIVELY, on behalf of MULTIPLAN, sent an additional correspondence to CRUTCHER via facsimile, entitled "Contract Copy," with the note "Branson Imaging [] DBA Tri-Lakes Diagnostic Imaging." The fourteen (14) page facsimile transmission included a copy of a contract between "Medical Investments of Branson d/b/a Branson Imaging" and "United Payors & United Providers" (hereafter "UP&UP"),[3] executed by Branson Imaging on May 17, 2000, and by UP&UP on May 24, 2000. A copy of the correspondence is attached hereto as Exhibit "K."

36. On February 27, 2015, CRUTCHER sent another letter to MULTIPLAN requesting a copy of the signed contract between MULTIPLAN/PHCS and TRI-LAKES, noting on the facsimile cover page that it was the "3rd request" for this information. A copy of the correspondence is attached hereto as Exhibit "L."

37. On or about March 4, 2015 and March 9, 2015, MULTIPLAN sent CRUTCHER identical facsimiles in response to her February 27, 2015 request, which stated that a signature from the "Facility Admin/CEO/Owner" was required in order to release the contract, despite MULTIPLAN having previously received the requested signature from CRUTCHER, as owner of TRI-LAKES, as indicated above. A copy of the aforementioned facsimiles are attached hereto as Exhibits "M" and "N," respectively.

38. In or about June of 2015, a MULTIPLAN representative identified as Anita Accomando (hereafter "ACCOMANDO"), sent a letter to CRUTCHER indicating that MULTIPLAN had determined that its discounts were valid based on a "completed review of the

---

[3] Upon information and belief, UP&UP was later acquired by BCE Emergis Corp. (hereafter "BCE"), and BCE was later acquired by MultiPlan in March of 2004.

contractual agreement" and "all correspondence received to [MULTIPLAN]" with respect to TRI-LAKES. The letter went on to explain that in April of 2000, a totally separate business entity, Branson Imaging, entered into a contract with an entity that was later acquired by MULTIPLAN, and further referenced CRUTCHER'S June 4, 2008 correspondence to PHCS. ACCOMANDO furthered indicated MULTIPLAN updated its system to add TRI-LAKES as a participating provider with the PHCS network based solely upon CRUTCHER'S June 4, 2008 letter. ACCOMANDO'S letter concluded by stating that no claim adjustments would be made by MULTIPLAN or its clients/payers because MULTIPLAN has no record of a request by TRI-LAKES or "your prior DBA [MEDICAL INVESTMENTS OF BRANSON]" to opt out of the "contractual agreement." A copy of the letter is attached hereto as Exhibit "O."

39.     On July 21, 2015, a MULTIPLAN representative identified as Heather Burke (hereafter "BURKE"), sent a letter to CRUTCHER similarly identifying the Branson Imaging agreement with PHCS and CRUTHCER'S June 4, 2008 letter as the basis for the "update" that added TRI-LAKES as a participating provider with the PHCS network. Specifically, BURKE'S letter, stated that "you entered into an agreement with PHCS effective 12-01-2007 with a tax id ending in 4072 then we received a W-9 to update your Tax Id ending in 7791 that is still currently active." The letter enclosed the aforementioned June 4, 2008 letter from CRUTCHER, and a fax cover sheet dated June 4, 2008 purporting to transmit a W-9, and identified these documents as "the information that was sent in to update the name change and Tax Id change." A copy of the letter is attached hereto as Exhibit "P."

40.     MULTIPLAN's and PHCS's purported reliance on the June 4, 2008 correspondence from CRUTHCER fails to acknowledge the numerous subsequent communications between CRUTHCER and MULTIPLAN/PHCS with respect to TRI-LAKES'S

status as a provider in the MULTIPLAN/PHCS network, CRUTCHER's numerous communications to MULTIPLAN/PHCS disputing the discounts applied by MULTIPLAN/PHCS, and the numerous disputes sent by CRUTCHER to payers in connection with the unauthorized discounting and/or repricing of claims sent by CRUTCHER/TRI-LAKES to said payers by MULTIPLAN and PHCS, in response to which MULTIPLAN and PHCS were notified of CRUTCHER's position that no valid contractual arrangement existed between CRUTCHER/TRI-LAKES and MULTIPLAN and PHCS.

41. Despite CRUTCHER's repeated requests for a copy of a contract between PHCS or MULTIPLAN and TRI-LAKES/CRUTCHER, MULTIPLAN and PHCS have failed to produce any such contract to date.

42. On August 13, 2015, the undersigned counsel for CRUTCHER sent a letter to MULTIPLAN via email and certified mail, article numbers EK795488625US and EK795488639US. The letter recited the above facts, and stated, in relevant part, that CRUTCHER never entered into a valid contractual relationship with MULTIPLAN or PHCS, and demanded that MULTIPLAN comply with certain conditions in order to avoid legal action by CRUTCHER, including as follows:

a. Within ten (10) days of the date of the letter, MULTIPLAN and PHCS were required to provide a full detailed accounting of each and every discount that was accessed and authorized by MULTIPLAN/PHCS through the PHCS network and/or the MULTIPLAN complimentary network, including any wholly owned and operated subsidiary of MULTIPLAN, which were in turn used to re-price medical claims submitted by TRI-LAKES to all payers;

b. Within ten (10) days of the date of the letter, MULTIPLAN and PHCS were required to agree in writing to reimburse all of the discounts identified in response to the above

condition, to be received by the undersigned counsel for CRUTCHER no later than twenty-one (21) days after the date of such agreement in writing.

      c.      MULTIPLAN and PHCS were required to immediately cease and desist any future discounting using the PHCS network and/or the MULTIPLAN complimentary network of medical claims submitted by TRI-LAKES to all payers.

      A copy of the letter is attached hereto as Exhibit "Q."

      43.      On August 14, 2015 and August 17, 2015, respectively, MULTIPLAN certified receipt of the of the above described August 13, 2015 letter. See Composite Exhibit "R" hereto.

      44.      On or about September 14, 2015, a MULTIPLAN representative identified as Nina Conway (hereafter "CONWAY") sent a letter to the undersigned counsel for CRUTCHER, responding to the above described August 13, 2015 letter. The letter stated, in relevant part, that that a previous letter sent by a MULTIPLAN representative named Heather Burke "indicated that [CRUTCHER] and [TRI-LAKES] entered into an agreement with PHCS" but "[t]his information is false."[4] The letter acknowledged that MULTIPLAN's sole basis for claiming that a PPO agreement existed between CRUTCHER/TRI-LAKES and PHCS/MULTIPLAN, and its basis for discounting medical claims submitted to payers by CRUTCHER/TRI-LAKES using the PHCS and MULTIPLAN networks, was the above described June 4, 2008 letter. The letter further states that "MULTIPLAN has no record of receiving a letter of opt out by [TRI-LAKES] or the prior DBA Branson Imaging." Concludes by stating that "MULTIPLAN "has decided to process a good faith disenrollment for [TRI-LAKES] within our systems and database" as of September 8, 2015, but that "[a]ll discounts must be accepted up until the date of September 8, 2015 in which [TRI-

---

[4] The letter further stated that "[t]he effective date of 12/1/2007 that [BURKE] provided is the acquisition date in which MULTIPLAN purchased PHCS."

LAKES] has been deemed non-participating and patients cannot be balance billed." A copy of the letter is attached hereto as Exhibit "S."

45.     The above described September 14, 2015 letter from MULTIPLAN ignores the above described subsequent contacts by CRUTCHER to MULTIPLAN in June of 2008 requesting an application, July of 2009 requesting a copy of any contract, and February of 2015 requesting a copy of any alleged contract; ignores the reply correspondence by MULTIPLAN in July of 2008 acknowledging CRUTCHER's request for an application and stating it would evaluate the request and respond, and the fact that no agreement was ever signed between CRUTCHER/TRI-LAKES and MULTIPLAN/PHCS subsequent to that correspondence; ignores the letter from LIVELY on July 22, 2009 acknowledging that no contract existed between CRUTCHER/TRI-LAKES and MULTIPLAN/PHCS; ignores the direct letters from CRUTCHER to MULTIPLAN/PHCS demanding that the repricing of medical claims submitted by CRUTCHER/TRI-LAKES cease; and ignores the fact that patients of CRUTCHER/TRI-LAKES were being charged the "out of network" rate by payers for services rendered by CRUTCHER/TRI-LAKES, even though claims submitted by CRUTCHER/TRI-LAKES to payers for these same services were being discounted at the "in network" rate by MULTIPLAN and PHCS using the PHCS network and/or the MULTIPLAN complimentary network.

46.     In addition, MULTIPLAN's position fails to acknowledge the numerous disputes sent by CRUTCHER to payers between 2008 through the current, in response to which MULTIPLAN and PHCS were notified of CRUTCHER's position that no valid contractual arrangement existed between CRUTCHER/TRI-LAKES and MULTIPLAN and PHCS.

47.     The failure by MULTIPLAN and PHCS to produce any contract between MULTIPLAN or PHCS and TRI-LAKES/CRUTCHER to date, despite numerous requests by

CRUTCHER to produce the same, is demonstrative of MULTIPLAN's and PHCS's knowledge that no valid contract exists between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS. Nevertheless, MULTIPLAN and PHCS continue to illegally discount and/or reprice medical claims submitted to payers by TRI-LAKES, and refuse to reverse and correct the unauthorized discounts that have been identified and disputed by CRUTCHER, and evidences the Silent PPO scheme perpetrated by MULTIPLAN and PHCS.

48.     Subsequent to MULTIPLAN sending the above described September 14, 2015 letter, wherein it represented that it would "process a good faith disenrollment" of TRI-LAKES within its system and database, MULTIPLAN has continued to engage in a Silent PPO scheme with respect to CRUTCHER/TRI-LAKES and continued to apply illegal discounts to medical claims submitted by CRUTCHER/TRI-LAKES to payers utilizing MULTIPLAN's subsidiary PPO networks. To wit, subsequent to the September 14, 2015 letter, CRUTCHER has received numerous EOBs from payers in response to bills for services rendered by CRUTCHER/TRI-LAKES reflecting PPO discounts utilizing the Data iSight network, which is a PPO network owned and operated by MULTIPLAN through its wholly owned subsidiary, Data iSight. See Exhibit "T" hereto.

49.     The Defendants' ongoing and continuous perpetration of the Silent PPO scheme described herein, has catastrophically damaged the financial stability of CRUTCHER/TRI-LAKES, and the Defendants' continued perpetration of this fraudulent and illegal scheme through its subsidiary networks, as described above, threatens the continued viability of TRI-LAKES as a business. As described above, TRI-LAKES is and at all times material was a small diagnostic imaging center owned and operated by CRUTCHER, with a staff of approximately five (5) employees. The financial consequences of Defendants' past and continuing scheme of illegal

repricing of medical claims, and the resulting deprivation of revenue owed to CRUTCHER/TRI-LAKES, has put TRI-LAKES in significant danger of closing.

50.      Defendants MULTIPLAN and PHCS have a corporate policy of engaging in the Silent PPO scheme alleged herein against health care providers, including health care providers in the state of Missouri, just as they did with respect to the Plaintiff herein.

51.      The Silent PPO scheme perpetrated by MULTIPLAN and PHCS, which directly causes health care providers in the State of Missouri to sustain significant losses in revenue and which threatens the viability of private medical practitioners in Missouri, has a detrimental impact on the economy of the state of Missouri. See Exhibit "U" hereto.

52.      Defendants MULTIPLAN and PHCS consent of and have knowledge and control of the activities of their agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees and/or contractors with respect to the activity alleged herein.

53.      Despite actual knowledge of their wrongdoing, Defendants MULTIPLAN and PHCS continued the Silent PPO scheme of applying unauthorized and illegal discounts to medical claims submitted to payers by CRUTCHER/TRI-LAKES.

54.      Defendants MULTIPLAN and PHCS followed their corporate policies in perpetrating the Silent PPO scheme with respect to CRUTCHER/TRI-LAKES.

55.      Defendants MULTIPLAN and PHCS have been the recipient of numerous complaints from medical providers across the country, similar to those alleged in this action by Plaintiff.

## COUNT I
### (Violation of RICO, 18 U.S.C. § 1962(c))

56.     CRUTCHER and TRI-LAKES re-allege and incorporate by reference the allegations of Paragraphs (1) through (55), as if fully set forth herein.

57.     This is an action for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") pursuant to 18 U.S.C. § 1962(c).

58.     At all relevant times, MULTIPLAN and PHCS were employed by and associated with an illegal enterprise, and conducted and participated in that enterprise's affairs, through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud, all in violation of the Racketeer Influenced and Corrupt Organizations Act (hereafter "RICO"), 18 U.S.C. § 1962(c).

59.     The RICO enterprise which was engaged in and the activities of which affected interstate and foreign commerce, was comprised of an association in fact of entities and individuals including MULTIPLAN and PHCS.

60.     The members of the RICO enterprise had a common purpose: to illegally discount medical claims submitted by CRUTCHER/TRI-LAKES, and refuse to reverse and correct the unauthorized discounts in the absence of a valid contractual agreement between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS, i.e., by benefiting from the incentives generated to them from insurance payers, by the joint scheme.

61.     The RICO enterprise functioned over a period of years as a continuing unit and maintained an ascertainable structure separate and distinct from the pattern of racketeering activity.

62.     MULTIPLAN and PHCS conducted and participated in the affairs of this RICO enterprise through a pattern of racketeering activity that lasted more than one year, at a minimum, and that consisted of numerous and repeated violations of federal mail and wire fraud statutes,

which prohibit the use of any interstate or foreign wire or mail facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

63. As part of and in furtherance of the scheme to defraud, MULTIPLAN and PHCS made material omissions and misrepresentations to CRUTCHER with the intent to defraud and deceive CRUTCHER. For example, MULTIPLAN and PHCS illegally applied unauthorized discounts to, and/or repriced, medical claims submitted by CRUTCHER/TRI-LAKES to insurance payers. MULTIPLAN and PHCS also represented in correspondence that there was a valid contractual agreement between MULTIPLAN/PHCS and CRUTCHER/TRI-LAKES which included discounts for medical claims submitted by CRUTCHER/TRI-LAKES despite the fact there was no validly executed contract agreement between MULTIPLAN/PHCS and CRUTCHER/TRI-LAKES. In discounting/repricing medical claims submitted by CRUTCHER/TRI-LAKES, MULTIPLAN and PHCS knowingly and intentionally engaged in a deceptive scheme to include reimbursement and/or repayment discounts of medical services rendered by CRUTCHER/TRI-LAKES, within their discount PPO networks, without a properly executed contractual agreement between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS authorizing such discounts/repricing, thereby defrauding CRUTCHER from receiving full payments for medical services.

64. For the purpose of executing the scheme to defraud, MULTIPLAN and PHCS sent, mailed and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign commerce, numerous materials, including but not limited to Explanation of Benefits ("EOB") documents, reimbursements, notices and correspondence, thereby defrauding CRUTCHER and depriving CRUTCHER/TRI-LAKES from receiving full payments for medical services rendered by CRUTCHER.

65.     By reason and as a result of MULTIPLAN's and PHCS's conduct and participation in the racketeering activity alleged herein, they have caused damages to CRUTCHER/TRI-LAKES in the form of illegally discounted reimbursements and/or payments for claims submitted to payers by CRUTCHER/TRI-LAKES for medical services rendered by CRUTCHER/TRI-LAKES.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants, MULTIPLAN and PHCS, for compensatory and treble damages, attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c), interest, and such other relief as this Court deems just and proper.

## COUNT II
### (Violation of RICO, 18 U.S.C. § 1962(d))

66.     CRUTCHER and TRI-LAKES re-allege and incorporate by reference the allegations of Paragraphs (1) through (55), as if fully set forth herein.

67.     This is an action for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") pursuant to 18 U.S.C. § 1962(d).

68.     At all relevant times, MULTIPLAN and PHCS were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(d). MULTIPLAN and PHCS agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

69.     MULTIPLAN and PHCS improperly applied reimbursement and/or repayment discounts within their PPO networks, to medical services rendered by CRUTCHER/TRI-LAKES, without a valid contractual agreement between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS authorizing such reimbursements and/or repayments discounts, thereby defrauding CRUTCHER and depriving CRUTCHER/TRI-LAKES from receiving full payments for medical services rendered by CRUTCHER/TRI-LAKES.

70. MULTIPLAN and PHCS benefited financially from applying the unauthorized discounts to, and/or repricing of, claims submitted by CRUTCHER/TRI-LAKES to payers for services rendered by CRUTCHER/TRI-LAKES.

71. MULTIPLAN and PHCS pass much of the savings from this illegal scheme to payers, and received kickbacks and fees from said payers in exchange for passing the savings from this illegal scheme to said payers.

72. MULTIPLAN and PHCS committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

73. As a result of MULTIPLAN's and PHCS's violations of 18 U.S.C. § 1962(d), CRUTCHER suffered damages in the form of lost income for medical services provided by CRUTCHER/TRI-LAKES.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants, MULTIPLAN and PHCS for compensatory and treble damages, attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(d), interest, and such other relief as this Court deems just and proper.

## COUNT III
### (Unjust Enrichment)

74. CRUTCHER and TRI-LAKES re-allege and incorporate by reference the allegations of Paragraphs (1) through (55), as if fully set forth herein.

75. There was no valid contractual agreement between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS for the repricing or discounting of medical claims for services rendered by CRUTCHER

76. MULTIPLAN and PHCS received benefits from CRUTCHER/TRI-LAKES providing healthcare services to patients.

77.     CRUTCHER/TRI-LAKES billed insurance payers for the reasonable value of these services.

78.     MULTIPLAN and PHCS sent bills to payers to provide payment for the healthcare services CRUTCHER/TRI-LAKES provided. These bills were improperly and illegally billed at a discounted PPO rate, without a valid contractual agreement between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS authorizing such discounts.

79.     CRUTCHER/TRI-LAKES received no consideration for the retention of the discounts.

80.     These bills directly benefited MULTIPLAN and PHCS with substantial monetary savings by wrongfully and illegally applying discounted rates to medical expense claims rendered by CRUTCHER/TRI-LAKES without a properly executed agreement between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS authorizing such discounts.

81.     MULTIPLAN and PHCS had knowledge that it reaped the financial benefits to the detriment of CRUTCHER/TRI-LAKES by knowingly accepting and returning said benefits.

82.     MULTIPLAN and PHCS will be unjustly enriched if they are allowed to retain the aforementioned benefits and CRUTCHER/TRI-LAKES are entitled to recover the amount by which MULTIPLAN and PHCS was unjustly enriched at their expense.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants MULTIPLAN and PHCS for compensatory damages, costs, interest and such other relief as this Court deems just and proper.

## COUNT IV
### (Civil Conspiracy)

83.     CRUTCHER and TRI-LAKES re-allege and incorporate by reference the allegations of Paragraphs (1) through (55), as if fully set forth herein.

84. CRUTCHER and TRI-LAKES charge MULTIPLAN and PHCS with civil conspiracy under the laws of the state of Missouri.

85. MULTIPLAN and PHCS knowingly and voluntarily agreed to, and participated in, a course of action to contract unlawfully and otherwise improperly to the economic detriment of CRUTCHER/TRI-LAKES.

86. MULTIPLAN and PHCS wrongfully and illegally applied discounted rates to medical expense claims rendered by CRUTCHER/TRI-LAKES without a valid contractual agreement between CRUTCHER/TRI-LAKES and MULTIPLAN/PHCS authorizing such discounts.

87. CRUTCHER/TRI-LAKES were injured and suffered damages of a pecuniary nature as a proximate result of MULTIPLAN's and PHCS's conspiracy.

WHEREFORE, Plaintiffs respectfully demands judgment against Plaintiffs/Counter-Defendants MULTIPLAN and PHCS for compensatory damages, costs, interest and such other relief as this Court deems just and proper.

## COUNT V
### (Common Law Fraud)

88. CRUTCHER and TRI-LAKES re-allege and incorporate by reference the allegations of Paragraphs (1) through (55), as if fully set forth herein.

89. In its above described July 30, 2008 letter,[5] MULTIPLAN and PHCS stated to CRUTCHER, in response to CRUTCHER's above described June 19, 2008 letter requesting an

---

[5] Exhibit "C" hereto.

application for participation for TRI-LAKES, [6] that it was "currently evaluating" the request and would "respond to the request in approximately 90 days."

90.     In its above described July 20, 2009 letter,[7] MULTIPLAN and PHCS stated to CRUTCHER that it was unable to identify a contract between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS and that "it is probable that [CRUTCHER] will need an updated contract for your ancillary facility."

91.     In making these representations, MULTIPLAN and PHCS represented to CRUTCHER that no PPO agreement existed between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS, and that MULTIPLAN and PHCS did not intend to reprice and/or apply PPO discounts utilizing the PHCS network and/or MULTIPLAN complimentary network to claims for medical services submitted to payers by CRUTCHER/TRI-LAKES.

92.     Each of MULTIPLAN's and PHCS's representations in this regard were false.

93.     Each of MULTIPLAN's and PHCS's representations in this regard were material, in that MULTIPLAN and PHCS proceeded to reprice and/or apply discounts utilizing the PHCS network and/or MULTIPLAN complimentary network to claims for medical services submitted to payers by CRUTCHER/TRI-LAKES

94.     MULTIPLAN and PHCS's misrepresentations to CRUTCHER that it did not consider a contract to exist between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS, and that it therefore did not intend to reprice and/or apply PPO discounts utilizing the PHCS network and/or MULTIPLAN complimentary network to claims for medical services submitted to payers

---

[6] Exhibit "B" hereto.

[7] Exhibit "J" hereto.

by CRUTCHER/TRI-LAKES, were known by MULTIPLAN and PHCS to be false when they were made.

95.     At the time MULTIPLAN and PHCS made the aforesaid misrepresentations, MULTIPLAN and PHCS intended to reprice and/or apply PPO discounts utilizing the PHCS network and/or MULTIPLAN complimentary network to claims for medical services submitted to payers by CRUTCHER/TRI-LAKES.

96.     MULTIPLAN and PHCS made the aforementioned misrepresentations to induce CRUTCHER into acting on and relying on the truth of said representations so that MULTIPLAN and PHCS could apply said PPO discounts to claims submitted by CRUTCHER/TRI-LAKES without CRUTCHER's knowledge or consent.

97.     At the time that MULTIPLAN's and PHCS's misrepresentations, as aforesaid, were made, CRUTCHER was ignorant of the falsity of these representations and had no knowledge of MULTIPLAN's and PHCS's intention to improperly and illegally reprice and/or discount claims submitted by CRUTCHER/TRI-LAKES utilizing the PHCS network and/or MULTIPLAN complimentary network, without a valid contractual agreement between CRUTCHER/TRI-LAKES and MULTIPLAN or PHCS authorizing such discounts. Indeed, patients of CRUTCHER were being charged the "out of network" rate by payers for services rendered by CRUTCHER/TRI-LAKES.

98.     CRUTCHER had the right to rely upon the truth of MULTIPLAN's and PHCS's misrepresentations, and did in fact rely on the truth of same by continuing to accept payments from payers without becoming aware that MULTIPLAN and PHCS had applied PPO discounts to said payments utilizing the PHCS network and/or MULTIPLAN complimentary network, despite patients being charged the "out of network" rate for the same services.

99. Moreover, MULTIPLAN/PHCS failed to disclose to CRUTCHER the material fact that MULTIPLAN and PHCS intended to, and did, rent or lease PPO discounts for services rendered by CRUTCHER/TRI-LAKES to downstream entities, including network brokers and third party administrators, resulting in further discounts being applied by third party payers to services rendered by CRUTCHER/TRI-LAKES.

100. Based on the allegations set forth throughout this Complaint, including the allegations in this Count, CRUTCHER had the right to rely upon the above representations of MULTIPLAN's and PHCS.

101. As a direct and legal and proximate result of CRUTCHER's reliance on MULTIPLAN and PHCS's material misrepresentations, as aforesaid, CRUTCHER/TRI-LAKES have been damaged in the amount of the difference between the full value of the billings for medical services and the discounted rate imposed by MULTIPLAN and PHCS, as well as statutory penalties and interest.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants MULTIPLAN and PHCS for compensatory damages, punitive damages, costs, interest and such other relief as this Court deems just and proper.

## COUNT VI
### (Accounting and Disgorgement)

102. CRUTCHER and TRI-LAKES re-allege and incorporate by reference the allegations of Paragraphs (1) through (55), as if fully set forth herein.

103. On accounting by MULTIPLAN and PHCS there will be found monies obtained by them that were wrongfully taken from CRUTCHER/TRI-LAKES because MULTIPLAN's and PHCS's discounted rates were improperly applied to bills submitted by CRUTCHER/TRI-LAKES for medical services she rendered.

104.     All monies taken from CRUTCHER/TRI-LAKES as a result of them wrongfully being paid at a discounted rate to third parties that did not and could not provide financial incentives to those parties' patients were in violation of the MULTIPLAN's and PHCS's contractual duties.

105.     CRUTCHER/TRI-LAKES have no adequate remedy at law to account for all monies obtained by MULTIPLAN and PHCS from third parties while purportedly acting on behalf of CRUTCHER/TRI-LAKES and in violation of MULTIPLAN's and PHCS's contractual duties.

WHEREFORE, Plaintiffs respectfully demands judgment against Defendants MULTIPLAN and PHCS, for compensatory damages, costs, interest and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated this 6th day of November, 2015.

Respectfully submitted,

CAMPBELL LAW, LLC

 /s/ Erich Vieth_____
Erich Vieth   MO29850
John E. Campbell, MO59318
Alicia Campbell   MO59586
20 S. Sarah Street
St. Louis, MO 63108
Office: 314.588.8101
Fax: 314.588.9188
Counsel for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 6th day of November, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send a notice of electronic filings via the Court's ECF system to all CM/ECF participants.

CAMPBELL LAW, LLC

 /s/ Erich Vieth_____
Erich Vieth   MO29850
John E. Campbell, MO59318
Alicia Campbell   MO59586
20 S. Sarah Street
St. Louis, MO 63108
Office: 314.588.8101 - Fax: 314.588.9188
Counsel for Plaintiff

*and*

David P. Mitchell, Esquire
Admitted *pro hac vice*
Florida Bar No.: 067249
MANEY & GORDON, P.A.
101 East Kennedy Blvd., Suite 3170
Tampa, Florida 33602
Phone: (813) 221-1366
David@MitchellInsuranceLaw.com
d.mitchell@maneygordon.com
v.marrero@maneygordon.com
Counsel for Plaintiff

*and*

Daniel P. Mitchell, Esquire
Admitted *pro hac vice*
Florida Bar No.: 0302937
BARR, MURMAN & TONELLI, P.A.
201 E. Kennedy Boulevard, Suite 1700
Tampa, FL  33602
Phone: (813) 223-3951
dmitchell@barrmurman.com
kcoriano@barrmurman.com
Counsel for Plaintiff