# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

KRIS CRUTCHER and TRI-LAKES          )
DIAGNOSTIC IMAGING, LLC.,             )
                                     )
     **Plaintiffs,**                )
                                     )
    **vs.**                           )     **Case No.  6:15-cv-03484-MDH**
                                     )
MULTIPLAN, INC. and PRIVATE          )
HEALTHCARE SYSTEMS, INC.,            )
                                     )
    **Defendants.**                   )

## ORDER

Before the Court is Defendants' Motion to Dismiss.  (Doc. 40).  Defendants move for dismissal of Plaintiff's claims set forth in their Amended Complaint.  Upon careful review of the issues raised and arguments provided, the Court hereby **DENIES** Defendants' motion.

## BACKGROUND

Plaintiffs Kris Crutcher and Tri-Lakes Diagnostic Imaging, LLC, brought this action against defendants Multi-Plan, Inc. and Private Healthcare Systems, Inc. asserting claims of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), unjust enrichment, civil conspiracy, common law fraud, and accounting and disgorgement.

Plaintiff Crutcher is a medical provider in Branson, MO providing medical diagnostic imaging services to patients through the limited liability company Tri-Lakes Diagnostic Imaging.[1]  Defendants operate as a Preferred Provider Organization ("PPO") Administrator.  Defendants in essence work as intermediaries between health care providers and health insurance

---

[1] The Court reviews the facts set forth in the Amended Complaint for purposes of analyzing Defendants' Motion to Dismiss.

1

companies to create a PPO network. The insurance payers, the health insurance companies, reimburse health care providers for services rendered to the payers' insureds pursuant to PPO arrangements. The health providers agree to offer a discounted rate to patients who are insured by payers in the network. In return, payers with access to the discounted rate provide incentives to patients in order to "steer" them to the health care providers. As a result, health care providers are compensated for a discounted rate by an increase in patients. The PPO administrator is responsible for determining which patients are in network or out of network and which applicable rate applies. The PPO administrator, in this case the Defendants, then sends a bill to the patient's insurance company that in turn reimburses the provider in the amount determined by the PPO administrator.

In the Amended Complaint, Plaintiffs allege, among other things, that Defendants were involved in a silent PPO - a payment scheme used to obtain illegal discounts for payers who were not entitled to them and without the provider's knowledge or consent. Plaintiffs allege Defendants either applied PPO discounts where no PPO agreement exists and/or by renting providers' discount rates to payers who are not part of the contracted PPO network. Plaintiffs allege this provided discounts to payers with whom they never intended to give a discount and also allowed third-party payers to access their discount rates without providing the "steerage" necessary to create a valid PPO relationship. Plaintiffs allege they lost significant revenue as a result of Defendants' actions.

Plaintiffs state an example of this silent PPO scheme was an agreement entered into between Multiplan and Coventry.[2] Plaintiffs allege Coventry entered into the agreement in order to access the provider discounts in Multiplan's PPO network and that Multiplan would profit

_____

[2] Plaintiffs also reference Cox Health Plans, Cox Health Systems Insurance Company, United Health Care Services, United Healthcare and Cigna.

from the agreement in the form of fees and kickbacks from Coventry marketing the PPO network and services. In essence, Plaintiffs allege Coventry then rented access to the discounted rate that Multiplan held out as available for claims, without the knowledge or consent of Plaintiffs. Plaintiffs allege Defendants intentionally omitted and failed to disclose their silent PPO plan to deduct significant discounts from payments owed to Plaintiffs for their medical services. Further, Plaintiffs allege Defendants made material misrepresentations and omissions designed to induce Plaintiffs to continue providing healthcare services and submitting their claims to insurance payers under this silent PPO plan.

Specifically, Plaintiffs claim Defendants misidentified, misrepresented and/or omitted certain data from the EOB forms sent to Plaintiffs in connection with discounted claims. Plaintiffs allege Defendants did this in order to conceal that the discounts were being applied utilizing network discounts, and omitted the identity of the network utilized in applying for the discount, with the intention of concealing the rental of the PPO network discounts and preventing Plaintiffs from discovering the "scheme." Plaintiffs allege the statements on the EOBs were false when made and were done in order to defraud and mislead Plaintiffs. Plaintiffs further claim Defendants intentionally concealed their relationships and rental agreements with network brokers and downstream entities.

In June 2008, Plaintiffs sent a letter to PHCS stating that the name of the business entity had changed but that it offered the same services as the prior entity (Branson Imaging) and was interested in continuing to participate in the PHCS network. Crutcher requested an application for participation based on the ownership change. Plaintiffs allege Multiplan responded saying they were in receipt of Plaintiffs request and were evaluating it. In 2009 Plaintiffs requested a copy of the written contract from Defendants. Defendants stated they were unable to identify the

3

contract and probably needed an updated contract for the current facility.[3]  In 2015, Plaintiffs again raised the issue regarding the contract and the terms of the agreement and Defendants were again unable to produce a copy of the contract.  Plaintiffs first contend that no PPO contract was ever entered into between Plaintiffs and Defendants.  Defendants disagree and contend that Plaintiffs were substituted for the prior entity (Branson Imaging) upon receipt of Plaintiffs' request to continue in the network.  In addition, Plaintiffs argue even if there was a contract, they still have claims against Defendants for RICO violations, fraud, civil conspiracy, common law fraud, and accounting and disgorgement.

### STANDARD OF REVIEW

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.  The reviewing court must read the complaint as a

---

[3] The entirety of the correspondence and discussions as alleged by Plaintiff are not reiterated herein.  There are multiple letters and exhibits attached to the Amended Complaint, but for purposes of this Order the communications are merely summarized in part.

4

whole rather than analyzing each allegation in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009).

## **DISCUSSION**

As previously stated, Plaintiffs claims are as follows:  Count I – Violation of RICO, 18

U.S.C. § 1962(c); Count II - Violation of RICO, 18 U.S.C. § 1962(d); Count III – Unjust

Enrichment; Count IV – Civil Conspiracy; Count V – Common Law Fraud; and Count VI –

Accounting and Disgorgement.  Defendants' arguments to dismiss Plaintiffs' claims can be

summarized as follows: 1) the claims are barred by the statute of limitations; 2) the claims should

be dismissed because the central allegations are contradicted by Plaintiffs' exhibits; 3) the RICO

claims are not plead with sufficient facts to show a pattern of racketeering activity or an

enterprise; and 4) Plaintiffs fail to plead their state law tort claims.

### **1.  Statute of Limitations**

First, Defendants argue Plaintiffs' claims are time-barred because the statute of

limitations accrued when Plaintiffs first sent a letter to Defendants in July 2009 inquiring about

the contract.  Defendants further argue the longest statute of limitation for Plaintiffs' claims is

five years, and therefore, all Plaintiffs' claims are barred because the original Complaint was not

filed until November 2015.  Defendants contend in July 2009 Plaintiffs knew that the alleged

improper "discounts" would continue under the terms of the agreement, however, Plaintiffs

chose to do nothing until the filing of the lawsuit in 2015.

In response, Plaintiffs argue that they have pled more than one theory, including that no

valid contractual relationship existed, and that Defendants defrauded Plaintiffs.  Plaintiffs agree

that the RICO statute of limitations is four years, but argue the statute of limitations does not

accrue until plaintiffs' discovery of the injury. Citing, *Rotella v. Wood,* 528 U.S. 549, 554

5

(2000)(analyzing the statute of limitations under a summary judgment standard). The parties disagree regarding when the statute of limitations accrues for RICO, and the other claims. However, the Court does not need to further determine the applicable standard at this stage. Defendants argue the statute of limitations should run "as soon as the plaintiffs discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." (Doc. 41, p. 8). Further, Defendants argue this is subject to a standard of "reasonableness." *Id.*

With regard to the fraud claim, Defendants' motion argues Missouri courts have routinely held that a plaintiff has a duty to inquire and discover the facts surrounding the fraud and that the "objective test" for the accrual of the statute of limitations may be decided by the Court when the relevant facts are not genuinely disputed. (Doc. 41, p. 8). Here, even taking Defendants' arguments as true, the Court finds there are clearly disputed facts based on Plaintiffs' allegations.

The 8th Circuit has stated, "a plaintiff's due diligence in the statute of limitations context is ordinarily a question of fact," but "if the evidence leaves no room for reasonable minds to differ on the issue, the court may properly resolve the issue as a matter of law." See *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 235 (8th Cir. 1996), aff'd, 521 U.S. 179, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997) (internal citations omitted). Here, Plaintiffs have alleged enough in the Amended Complaint to survive a motion to dismiss. As such, a determination regarding the application of the statute of limitations to Plaintiffs' claims is premature. Whether the applicable statute of limitations will apply and/or bar any of Plaintiffs' allegations contained in their Amended Complaint would require analysis of evidence outside of Plaintiff's initial pleadings. Therefore, without making any determination on the merits of the claims presented, the Court denies the motion to dismiss.

6

### 2. Contradictions to Exhibits

Defendants argue Plaintiffs' theories can be categorized into two central claims: 1) Defendants did not have a valid contract and applied discounts anyway; or 2) even if there was a valid contract Defendants are still liable because they allowed improper discounts outside of the terms of the agreement. Defendants allege under either of these theories, Plaintiffs' claims should be dismissed because they are refuted by the EOBs, correspondence and other documents referenced in the Amended Complaint.

Defendants urge the Court to interpret the correspondence and EOBs to determine that they refute Plaintiffs' allegations. In fact, Defendants state, "the Court can quickly scan the 41 pages of EOBs attached as Ex. W and see that the source of the discount is plainly identified." (Doc. 41, p. 12). Defendants further argue the Court can also conduct a "cursory review of the EOBs" and find that Defendants did not intentionally hide the source of the discounts. The Court finds Defendants' arguments based on the Court's review of materials and exhibits to the Complaint to be entirely unpersuasive. In analyzing a Motion to Dismiss, the Court cannot "easily identify," from a "cursory review," whether Defendants in fact created documents or their intent in doing so. These are appropriate issues for discovery and are issues that could be revisited based on the evidence produced in discovery. The Court denies the Motion to Dismiss based on this argument.

### 3. RICO

"Section 1962 of the RICO Act makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" *Crest Const. II,*

7

*Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). Plaintiff must establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity to prove a violation of § 1962(c). *Id.*; see also *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009). A RICO claim must be pleaded with particularity and requires Plaintiffs to plead the who, what, when, where and how. *Id.*

An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Id,* see also *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, 781 F. Supp. 2d 837, 843 (D. Minn. 2011). In *Crest Const. II, Inc.,* the 8th Circuit upheld the district court's dismissal of a RICO claim finding Plaintiffs had failed to allege an association between the defendants. *Id.* (citing a failure to allege a common purpose of engaging in a course of conduct). Here, the Court finds the allegations in Plaintiffs' Amended Complaint are different. Plaintiffs have alleged an association between the Defendants and other entities regarding the "scheme" to provide discounted rates through a silent PPO. Whether Plaintiffs will in fact be able to meet the burden associated with the elements of a RICO claim is not before the Court at this time. The Court finds Plaintiffs have alleged enough to survive a motion to dismiss.

Defendants also argue Plaintiffs have failed to plead sufficient facts to show a pattern of racketeering activity. "To constitute racketeering activity under RICO, the predicate acts must be related...." and "a pattern is shown through two or more related acts of racketeering activity that 'amount to or pose a threat of continued criminal activity." *Id.* at 356 (internal citations omitted). To satisfy the continuity element, Plaintiffs must "provide evidence of multiple

8

predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity)." *Id.*

Here, Plaintiffs allege Defendants committed violations through mail and wire fraud, including the EOBs, reimbursements, notices and correspondence. Defendants argue Plaintiffs allegations are "generic and conclusory" and therefore do not meet the elements of a pattern of racketeering activity. However, the Court finds Plaintiffs have pled enough to survive the motion to dismiss. Plaintiffs Amended Complaint identifies the alleged wrongful conduct of Defendants with regard to Plaintiffs claims that Defendants intentionally, fraudulently and through misrepresentations provided continual alleged improper discounts through a relationship that was unknown to Plaintiffs, and further concealed the discounts from Plaintiffs during the time period set forth in the complaint. Again, whether Plaintiffs will be able to meet the burden associated with a RICO claim is unknown and the Court makes no determination on that issue.

### 4. Failure to plead with particularity

The Federal Rules of Civil Procedure require a party alleging fraud to state "with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). The 8th Circuit has stated a plaintiff must allege "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009); citing *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). In other words, Plaintiff must allege the "who, what, where, when, and how" of the alleged fraud. *Id.*

In order to make a submissible case of fraudulent misrepresentation, Plaintiffs must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person

Case 6:15-cv-03484-MDH   Document 74   Filed 11/18/16   Page 9 of 13

and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007)

Defendants argue Plaintiffs have failed to identify the "how" of the alleged scheme to defraud. Defendants state Plaintiffs do not specify or identify the nature of the Defendants' relationship with the other unnamed entities; which EOB misled Plaintiffs; and how the EOBs are misleading. This Court disagrees. As set forth herein, Plaintiffs have alleged the basis for the claim of fraud (and RICO) to survive a motion to dismiss.

**5. Unjust Enrichment.**

An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which the retention of the benefit, without paying its reasonable value, would be unjust. *Vaughan v. Aegis Commc'ns Grp.*, LLC, 49 F. Supp. 3d 613, 620–21 (W.D. Mo. 2014); citing, *S & J, Inc. v. McLoud & Co. LLC.*, 108 S.W.3d 765, 768 (Mo.App. 2003). A claim for unjust enrichment has three elements: (1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable. *Id.*, citing, *Hertz Corp. v. RAKS Hospitality, Inc*., 196 S.W.3d 536, 543 (Mo.App. 2006). Demonstrating unjust retention of the benefit is the most significant element of unjust enrichment and also the most difficult to establish. *Id.*, *Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr*., 280 S.W.3d 678, 697 (Mo.App. W.D. 2009). "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Id.*

Here, Defendants argue Plaintiffs did not confer any benefit directly to Defendants. Rather, they argue Plaintiffs allege Defendants improperly gave discount to other insurance companies for services rendered. Defendants further argue none of the money went directly to Defendants, Plaintiffs' services went to patients and alleged improper discounts went to companies paying their bills.

On the other hand, Plaintiffs argue Defendants' fraudulent conduct resulted in the misappropriation of money owed to Plaintiffs, along with a portion of that money being conferred upon Defendants in the form of "kickbacks." In addition, Plaintiffs' theory contends that Plaintiffs provided medical services to patients and Defendants applied improper discounts to those services that resulted in financial benefit to Defendants and a determinant to Plaintiffs. The Court finds Plaintiffs have pled enough to allege a claim for unjust enrichment.

### 6. Civil Conspiracy

Defendants argue if the Court grants Defendants' motion as to the other causes of action then the conspiracy claim must fail. However, the Court has denied the motion as set forth herein. Further, Plaintiffs allege that Defendants conspired to discount Plaintiffs' claims with entities such as Coventry and Cox Health Plans, along with other network brokers and downstream entities. The Court finds Plaintiffs have sufficiently plead a civil conspiracy claim in the Amended Complaint.

### 7. Accounting and Disgorgement

 Four elements must be pled to invoke the equitable principles necessary to seek an accounting: 1) "the need for discovery;" 2) "the complicated nature of the accounts;" 3) "the existence of a fiduciary or trust relationship;" and 4) "the inadequacy of legal remedies." *Camden Cty. ex rel. Camden Cty. Comm'n v. Lake of Ozarks Council of Local Governments*, 282

11

S.W.3d 850, 861 (Mo. Ct. App. 2009).

Here, Defendants argue Plaintiffs have failed to plead the elements of an accounting, specifically the existence of a fiduciary relationship. Defendants further argue Plaintiffs have failed to allege, and cannot establish, how monetary damages are inadequate or that Defendants have wrongly taken money from Plaintiffs. While it is unclear whether Plaintiffs will be able to establish these elements, including whether legal remedies are adequate pursuant to the allegations, Plaintiffs have alleged a scheme in where alleged kickbacks, and potential profits to Defendants, were obtained at Plaintiffs' "expense." The Court further acknowledges that Plaintiffs state in their opposition that "there is no fiduciary relationship alleged between Plaintiffs and Defendants." However, discovery on this issue will correlate with Plaintiffs' other claims, and the factual circumstances of the relationship not only between Plaintiffs and Defendants, but also Defendants and third-party payors, will become more clear. The Court finds based on Plaintiffs' allegations of monies taken by Defendants pursuant to wrongfully applied discounted rates and out of network patients, an accounting could be required in order to analyze Plaintiffs' claims. The Court will revisit whether this claim may proceed after the discovery of evidence. Until further discovery is conducted, the Court denies the pending motion to dismiss this claim.

## CONCLUSION

While the Court's Order does not address the merits of this case, it finds Plaintiffs have pled enough to proceed on their claims. Therefore, the Court **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated:  November 18, 2016

 _/s/ Douglas Harpool_____
DOUGLAS HARPOOL
UNITED STATES DISTRICT JUDGE